# STATE OF CONNECTICUT *v.* JOHN M.[1]
## (AC 24174)

Dranginis, McLachlan and Stoughton, Js.

---

[1] In accordance with General Statutes § 54-86e, as amended by Public Acts 2003, No. 03-202, § 15, and this court's policy of protecting the privacy interests of victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained.

Argued November 15, 2004—officially released February 8, 2005

*John W. Watson*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Anne F. Mahoney*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, John M., appeals from the judgment of conviction, rendered following a trial to the court, of four counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), three counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[2] On appeal, the defendant

---

[2] During the course of the defendant's charged misconduct, which spanned the six years between 1994 and 2000, the legislature amended General Statutes (Rev. to 1993) § 53-21 to add current subdivision (2). Prior to this amendment, which occurred in 1995, § 53-21 consisted only of the broader language encompassed in subdivision (1). In 2000, the legislature again amended § 53-21 by designating subsections (a) and (b), neither of which altered the then existing language of the statute.

During the trial, the state indicated that it had chosen to charge the defendant's conduct in the aggregate under only two counts of risk of injury to a child as opposed to charging the defendant separately for each act that could constitute a violation of the statute. The state also indicated, and

claims (1) that the trial court made several improper evidentiary rulings that prohibited him from presenting a full defense and (2) that prosecutorial misconduct that occurred during the state's closing argument in rebuttal deprived him of a fair trial. We affirm the judgment of the trial court.

The nature of the defendant's claims does not require us to recount in detail the sexual abuse the victim suffered. It is sufficient for us to note that, beginning in 1992, the defendant engaged in a persistent course of sexual conduct toward his daughter that ended only after she disclosed the abuse in the end of 2000. During these years of abuse, the victim lived with the defendant, her stepmother, M, and her two brothers. Shortly before the victim disclosed the defendant's actions, first to M and then to others, the defendant moved out of the family home to live with another woman, whom he later married. The state's case consisted mainly of the victim's testimony regarding the defendant's conduct, as well as the testimony of a number of constancy of accusation witnesses and a nurse practitioner who evaluated the victim after she disclosed the abuse. M and the victim's younger brother also testified for the state, mainly highlighting family relationships and the home environment. The defendant extensively cross-examined these witnesses and also presented the testimony of a number of other witnesses. The defendant maintained his innocence throughout the trial, and several of his witnesses testified as to the lack of physical trauma to the victim or the lack of other physical evidence. To rebut the characterization of family relationships and home life presented by the state's witnesses, the defendant presented the testimony of his current

defense counsel agreed, that the information charged the conduct in such a manner so that the conduct would constitute a violation of both the current statute and the pre-1995 version. In light thereof, we refer in this opinion to the current version of § 53-21.

wife and his mother and testified on his own behalf. In rendering its judgment, the court noted that its decision hinged largely on the credibility of witnesses and indicated that it found the victim quite credible while considering much of "the defendant's testimony . . . merely self-serving in content." The court found the defendant guilty on all counts. Additional facts will be recounted as necessary.

I

The defendant first claims that the court deprived him of his right to present a defense when it prohibited him from presenting (1) evidence of M's alleged history as a victim of sexual abuse and (2) evidence of M's animus toward him.[3] The defendant suggested that this evidence was vital to his theory of the case, which was that M persuaded the victim to make these allegations against him either (1) to punish him for leaving M, who has been diagnosed with a crippling disease, for another woman or (2) to ensure that the victim could reside with M after the divorce even though M is not her biological or adoptive parent. The defendant sought to testify that M had told him about having been abused sexually when she was younger and that the abuse she disclosed to him closely paralleled the victim's allegations against him. The defendant also sought to testify that, contrary to M's testimony, he had told M that he was leaving her and never returning, and yet she wanted him to come back and believed that he would return to her. The evidence at issue was proffered only through the defendant's testimony. During cross-examination of

---

[3] The state argues, in asserting that the court properly excluded the evidence on the basis of relevance, that the proffered evidence would not have suggested animus on the part of M, but rather would have showed that she still harbored some hope for reconciliation with the defendant. For purposes of reviewing the defendant's claim, we will give him the benefit of assuming that, had he been given the opportunity to develop this testimony, he would have been able to develop it so as to meet the proffered end.

M, the defense failed to inquire into this subject matter. The court excluded both pieces of evidence as irrelevant and, even if relevant, as hearsay not within any exception to the rule against hearsay.

"Before addressing the merits of the defendant's claim, we review the legal principles that govern our review. The federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . [guarantees] the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the [court] so that it may decide where the truth lies." (Internal quotation marks omitted.) *State* v. *Saunders*, 267 Conn. 363, 382, 838 A.2d 186, cert. denied, 541 U.S. 1036, 124 S. Ct. 2113, 158 L. Ed. 2d 722 (2004).

"The defendant's sixth amendment right, however, does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . Generally, an accused must comply with established rules of procedure and evidence in exercising his right to present a defense. . . . A defendant, therefore, may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated. . . . Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . Evidence is relevant if it tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence. . . . To be relevant, the evidence need not exclude all other possibilities; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree." (Citations omitted; internal quotation marks omitted.) *State* v. *Cerreta*, 260 Conn. 251, 261–62, 796 A.2d 1176

(2002). "[I]t is well settled that questions of relevance are committed to the sound discretion of the trial court." *State* v. *Barletta*, 238 Conn. 313, 332, 680 A.2d 1284 (1996).

## A

We first evaluate the defendant's claim that the court improperly excluded evidence of M's alleged history of sexual abuse. The defendant sought to testify that M had told him she had a history of sexual abuse. The defendant claims that the details of M's history closely paralleled the allegations against him and, therefore, this testimony would support the defendant's theory that M coached the victim in making these allegations against him. The defendant's testimony, however, was that M shared her history of sexual abuse with him, not with the victim. The defendant's argument, therefore, would have required the court, as fact finder, to make the inferential leap that because M shared this information with the defendant, she must have shared it with the victim and then coached the victim using this history. We are unable to say, therefore, that the court abused its discretion when it determined that this evidence, independent of any evidence that M shared her history with the victim, was irrelevant as to whether M had coached the victim in making her allegations against the defendant.[4]

---

[4] We note that this situation is wholly different from that presented in *State* v. *Albert*, 50 Conn. App. 715, 719 A.2d 1183 (1998), aff'd, 252 Conn. 795, 750 A.2d 1037 (2000), to which both the state and the defendant cite for support. In *Albert*, the defendant sought to obtain testimony from the witness, who he argued had coached the victim regarding that witness' sexual history. Id., 729. In this case, the defendant did not attempt to elicit testimony from M regarding her history of sexual abuse or her imparting of this history to the victim, but rather sought to testify that M had told him of this history. That M told the defendant she had a history of sexual abuse has no bearing on whether such information ever was relayed to the victim making the allegations here.

## B

The defendant also sought to testify that when he told M that he was "splitting up with her," she indicated that she expected him to come back to her. This testimony could have been construed to contradict M's earlier testimony that she "wanted [the defendant] gone . . . wanted him to move out." The defendant argued that the proffered testimony was relevant to the animus M felt toward him. The court, *assuming M felt animus toward the defendant*, concluded that any such animus was irrelevant as to the truth of the victim's allegations against the defendant. After further argument by defense counsel, the court indicated that even if the proffered testimony were relevant, it consisted of hearsay that was not admissible under any exception to the rule against hearsay, as the proffered testimony did not satisfy the inconsistent statement exception to the rule.[5]

We reiterate that "[w]e review evidentiary claims pursuant to an abuse of discretion standard. Generally, [t]rial courts have wide discretion with regard to evidentiary issues and their rulings will be reversed only if there has been an abuse of discretion or a manifest injustice appears to have occurred. . . . Every reasonable presumption will be made in favor of upholding the trial court's ruling, and it will be overturned only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Daniels*, 83 Conn. App. 210, 214–15, 848 A.2d 1235, cert. denied, 270 Conn. 913, 853 A.2d 528 (2004).

The defendant argues that, pursuant to our rules of evidence, the court should have admitted his proffered

---

[5] We note that the statement would not constitute hearsay unless it had been offered for the truth of what it asserted. See Conn. Code Evid. § 8-1 (3). The defendant argued both at trial and on appeal that the proffered evidence was not offered for substantive purposes, but instead was offered to impeach M's credibility.

testimony either as an inconsistent statement for purposes of impeaching M's credibility or as evidence of M's prejudice against him. Prior to discussing further the legal principles governing our review of the defendant's claim, we note that at no time during the defendant's cross-examination of M did he inquire whether she had expected or desired that he reunite with her, contrary to her testimony on direct examination. Because the defendant did not inquire into this area during cross-examination, the proffered testimony amounted to extrinsic evidence of either a prior inconsistent statement or M's animus toward the defendant, without any foundation having been laid previously. Granting the defendant the benefit of the assumption that M's alleged prior inconsistent statement or animus toward him bore some relevance as to the truth of the victim's allegations, we still cannot say that the court's exclusion of the evidence constituted a clear abuse of discretion, regardless of the grounds on which the defendant sought to have the proffered testimony admitted.

We first will view the proffered evidence as an alleged prior inconsistent statement by M. As previously indicated, the evidence the defendant sought to admit was extrinsic evidence of a prior inconsistent statement because M was not asked about the statement during cross-examination.[6] Our review of the defendant's claim, therefore, is governed by § 6-10 of the Connecticut Code of Evidence. Subsection (c) of that rule provides in relevant part: "If a prior inconsistent statement made by a witness is not shown to or if the contents of the statement are not disclosed to the witness at the time the witness testifies, extrinsic evidence of the statement is inadmissible, except in the discretion of

---

[6] "Extrinsic evidence comes from someone other than the person whose statement is being challenged by the evidence." *State* v. *Daniels*, supra, 83 Conn. App. 215.

the court." This rule, as well as the case law discussing the legal principles it embodies, clearly indicates that the trial court is vested with wide discretion in determining whether extrinsic evidence of prior inconsistent statements should be admitted in a trial when no foundation has been laid. See, e.g., *State* v. *Ward*, 83 Conn. App. 377, 393, 849 A.2d 860, cert. denied, 271 Conn. 902, 859 A.2d 566 (2004), quoting *State* v. *Butler*, 207 Conn. 619, 626, 543 A.2d 270 (1988) (" '[f]rom early times, it has consistently been held that it rests within the judicial discretion of the trial court whether to admit the impeaching statements where no foundation has been laid' "). Because of the wide latitude the court had in exercising its discretion and because the defendant's relationship with M was minimally probative of whether the victim's allegations were true,[7] we cannot say that the court clearly abused its discretion in excluding this evidence as a prior inconsistent statement.

We next view the proffered testimony as evidence of M's animus toward the defendant and review his claim that the court improperly excluded this evidence. The defendant correctly notes that "[b]ecause evidence tending to show a witness' bias, prejudice or interest is never collateral; e.g., *State* v. *Chance*, 236 Conn. 31, 58, 671 A.2d 323 (1996); impeachment of a witness on these matters may be accomplished through the intro-

---

[7] We note, too, that the court may have considered the issue of whether M believed the defendant would come back to her to be a collateral issue, not directly relevant to the merits of the case. Whether this issue was a collateral matter rested within the sound discretion of the trial court. See *State* v. *Colton*, 227 Conn. 231, 248, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). If the court had determined that it was a collateral matter, it would have been improper for the prior inconsistent statement to be admitted for impeachment purposes. See *State* v. *Negron*, 221 Conn. 315, 327, 603 A.2d 1138 (1992) ("witness may not be impeached by contradicting his or her testimony as to collateral matters, that is, matters that are not directly relevant and material to the merits of the case"); Conn. Code Evid. § 6-10 (c), commentary.

duction of extrinsic evidence, in addition to examining the witness directly. See, e.g., *State* v. *Bova*, [240 Conn. 210, 219, 690 A.2d 1370 (1997)]; *Fairbanks* v. *State*, 143 Conn. 653, 657, 124 A.2d 893 (1956)." Conn. Code Evid. § 6-5, commentary. Our rule differs from that of many other jurisdictions, which require that a foundation first be laid "before bias or prejudice of a witness can be shown by statements made out of court . . . ." *State* v. *Townsend*, 167 Conn. 539, 560, 356 A.2d 125, cert. denied, 423 U.S. 846, 96 S. Ct. 84, 46 L. Ed. 2d 67 (1975). That does not mean, however, that a defendant may present every piece of evidence he wants to present. Instead, "where no foundation has been laid by cross-examination of the witness who is under attack for bias or prejudice, the decision whether or not to admit impeaching statements made by him out of court to, or in the presence of, others lies within the judicial discretion of the court." *State* v. *Mahmood*, 158 Conn. 536, 540, 265 A.2d 83 (1969).

The court had assumed that M felt animus toward the defendant, and these sentiments were elicited by both the state and defense counsel on direct and cross-examination. As the state pointed out, this animus also is minimally probative of the veracity of the victim's allegations. "It is a reasonable exercise of judicial discretion to exclude . . . evidence the relevancy of which appears to be so slight and inconsequential that to admit it would distract attention which should be concentrated on vital issues of the case." (Internal quotation marks omitted.) *State* v. *Crowley*, 22 Conn. App. 557, 560, 578 A.2d 157, cert. denied, 216 Conn. 816, 580 A.2d 62 (1990). We conclude that the court did not abuse its discretion in excluding the proffered evidence of M's animus toward the defendant.

The defendant's constitutional claim that he was prevented from presenting a defense by the trial court's exclusion of these two pieces of proffered evidence

first required him to demonstrate that the exclusion was improper. See *State* v. *Saunders*, supra, 267 Conn. 383. Because we conclude that the court did not abuse its discretion in excluding the proffered evidence, the defendant's constitutional right to present a defense was not violated.

## II

The defendant also claims that prosecutorial misconduct during the rebuttal section of the state's closing argument to the jury deprived him of a fair trial. The defendant argues that the prosecutor improperly (1) commented on and injected her opinions of his credibility and that of his current wife, (2) engaged in a gratuitous character assassination of him, (3) injected extraneous matters into the case by commenting on possible defense strategy and (4) attempted to bolster the victim's credibility by citing her family's support of her allegations.[8]

"[W]e first review the principles that govern our resolution of claims of prosecutorial misconduct. [T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . In determining whether the defendant was denied a fair trial [by virtue of prosecutorial misconduct] we must view the prosecutor's comments in the context of the entire trial. . . .

[8] We note that, in his brief, the defendant did not specify clearly those portions of the argument he found improper, but instead attacked the state's rebuttal argument as a whole, isolating certain remarks and providing little explanation of how or why these remarks were improper. He then reiterated any favorable case law that minutely supported his sweeping claims. In evaluating the state's rebuttal argument to determine whether the prosecutor engaged in misconduct, therefore, we focus on those four claims we were able to decipher from the defendant's brief. See *State* v. *Swinton*, 268 Conn. 781, 862, 847 A.2d 921 (2004).

"[I]n analyzing claims of prosecutorial misconduct, we engage in a two step analytical process. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 571–72, 849 A.2d 626 (2004). We therefore will review each category of claimed misconduct in turn to determine whether, in fact, the prosecutor committed misconduct.

A

The defendant first claims that the prosecutor engaged in misconduct by improperly expressing her personal opinion regarding his credibility and that of one of his key witnesses. Specifically, the defendant claims that the prosecutor improperly commented on their credibility when she speculated that he and his current wife had feigned forgetfulness of certain details that they may have believed would hurt his case.[9]

---

[9] Our review of the record reveals the following instances in which the prosecutor commented on the forgetfulness of defense witnesses. Early in the rebuttal argument, the prosecutor stated: "He admitted that [the victim] knew about his relationship with [his current wife] before M did. He admitted that he was involved sexually with [his current wife] in the beginning of April of 2000, which is what [the victim] testified to, Your Honor. He admitted that he has a scar on his leg, which [the victim] testified about. She also testified about her father owning 'Taboo,' an adult video. Again, his memory goes on the blink. Sure, he bought it; sure, he watched it, but whoa, he can't remember the fact that there's incestuous relationships, father-daughter, in that video because, quite frankly, isn't it because he knows it would hurt his case to recall that?"

The prosecutor later stated about the defendant: "He can't remember when he divorced [the victim's biological mother], but he can remember that he got the divorce in a month. His memory lapses, Your Honor, the state contends are self-protection." The prosecutor also argued: "Your Honor, the defendant's memory loss, you know, he had several instances of it. Doesn't know what year he married M. Could that be because he actually started

"As a general rule, prosecutors should not express their personal opinions about the guilt of the defendant, credibility of witnesses or evidence." *State* v. *Holliday*, 85 Conn. App. 242, 261, 856 A.2d 1041, cert. denied, 271 Conn. 945, 861 A.2d 1178 (2004). A prosecutor, however, is permitted "to comment upon the evidence presented at trial and to argue the inferences that the [fact finder] might draw therefrom . . . ." (Internal quotation marks omitted.) *State* v. *Thompson*, 266 Conn. 440, 465, 832 A.2d 626 (2003.) Likewise, a prosecutor is permitted "to remark on the motives that a witness may have to lie." Id., 466. At trial, conflicting testimony was elicited from a variety of witnesses regarding those facts that were the subject of the prosecutor's argument here. It is clear that the prosecutor merely was marshaling the evidence for the fact finder to consider when assessing the credibility of the witnesses, and, as such, the prosecutor's comments were not improper.[10]

having sex with M when he was still married [to the victim's biological mother] and he knew that looks bad? He knows that it looks bad to remember that on 'Taboo' that there were incest father-daughter setups and that that's what he showed to [the victim]. Does it look bad to suggest that, you know, when he's forgetting with the candles, oh, no there was something else in the car; I can't remember what it was? It's a whiskey bottle. He knows it looks bad."

The prosecutor later commented in relevant part as to the defendant's current wife: "[She] argues with me that she never told [the detective] that the defendant drank shots of [liquor]. The defendant, himself, concedes in his own testimony that he drank shots of [liquor]. It's up to you to decide what her credibility is, and the state would suggest that on critical issues, whether or not the defendant drank shots, whether or not she left because of spousal abuse, and the fact that M had offered her to come live in the home or that building where they were, she's saying no, no, no . . . she agrees that [the detective] got the rest of it all right. But those three things he got wrong. And the reason she's denying that is because she thinks that she can't admit the fact that, yes, M did offer her a place to live."

[10] We also recognize that this was a trial to the court, not a jury trial. Although this fact would weigh more heavily in the second part of our analysis, in determining whether any misconduct deprived the defendant of a fair trial, it is a factor we consider in concluding that the fact finder in this instance fully understood that weighing the credibility of witnesses was solely in its domain, an understanding further reinforced by the prosecu-

## B

The defendant next claims that the prosecutor engaged in a gratuitous character assassination of him that appealed to the passions and emotions of the fact finder when she twice injected sarcastic comments during her rebuttal argument. Specifically, the defendant claims that the prosecutor's reference to him as "Mr. Sensitive" and her comment, "[w]hat a man," when discussing testimony about his having challenged his young sons to fistfights, deprived him of a fair trial.[11] We disagree with the defendant that these two comments were improper.

It is well established that "[a] prosecutor may not appeal to the emotions, passions and prejudices of the [fact finder]"; (internal quotation marks omitted) *State v. Rizzo*, 266 Conn. 171, 255, 833 A.2d 363 (2003); and our Supreme Court has recognized that repetitive and excessive use of sarcasm is one method of improperly swaying the fact finder. Id., 263–64. A situation such as the one here, however, in which the prosecutor used sarcasm only twice in her rebuttal argument, does not constitute such an appeal. The comments were made in the course of the prosecutor's marshaling of and commenting on the evidence, as well as in her response

tor's comment to the court: "It's up to you to decide what her credibility is . . . ."

[11] The prosecutor commented in rebuttal argument: "There's a suggestion that there was no physical violence. That when [the victim] went [for counseling, she] talked about physical abuse in the home. Well, you heard from M that when the defendant would drink too much, he would challenge his own sons, little boys. What a man. He also pushed M one time in front of [the victim].

Later, the prosecutor stated: "The defendant has a large ego, Your Honor. He was upset with [the victim] when she told him about having oral sex with the two boys, not because she did that, but because she didn't tell him first. He wanted M to do the adult videos, but only the ones that were for him, the lesbian ones for his pleasure. He wanted two wives, but he couldn't get the two women to agree. He—Mr. Sensitive—decides to tell his wife on her birthday, anniversary, thirty years old, that he's got another woman."

to defense counsel's closing argument. Although we neither encourage nor condone the use of sarcasm, we also recognize that not "every use of rhetorical language or device is improper. . . . The occasional use of rhetorical devices is simply fair argument." (Internal quotation marks omitted.) *State* v. *Brown*, 256 Conn. 291, 310, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001). The prosecutor's limited use of sarcasm in this instance was not improper.

## C

The defendant also claims that the prosecutor engaged in misconduct by commenting on possible defense strategy. Specifically, the defendant claims that the prosecutor improperly commented on defense counsel's failure to ask certain questions of the witnesses.

The following additional facts are necessary for our resolution of this claim. The victim testified that the defendant told her that they were "soul mates." She also testified that one of the specific acts of sexual assault occurred when M went out of town to see some relatives, and the defendant required the victim to sleep on the couch in the living room so that she could slip inside his bedroom easily without being seen by her brothers. One of the victim's brothers, D, corroborated the victim's testimony about the victim sleeping on the couch when M went out of town. Defense counsel did not cross-examine either witness regarding these specific facts. The defendant testified as to contradictory information. The defendant stated that he believed the victim garnered the concept of "soul mates" from a book he saw her reading and that although he had requested that the victim sleep on the couch while M was out of town, it was a request he made of both the victim and D so that the two of them could watch over a new pet dog on alternate evenings.

In the state's rebuttal argument, the prosecutor made the following comments about these two issues: "There's a suggestion that [the victim] got this idea of a soul mate out of a book. That was suggested through the defense—the testimony of the defendant. And, yet, surprisingly, neither the defense—the defense attorney didn't ask [the victim] about this mythical book. He didn't ask M about this mythical book, and he didn't ask D about this mythical book. . . . He suggests that D also—the defendant said, well, you know, I let both kids sleep on the couch when M was gone . . . . And, yet, the defense did not ask D whether or not he'd ever slept on the couch to take care of the dog."

"It is improper for a prosecutor to denigrate the function of defense counsel. . . . [T]he prosecutor is expected to refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel." (Citation omitted; internal quotation marks omitted.) *State* v. *Holliday*, supra, 85 Conn. App. 263. In determining the propriety of these comments, however, we keep in mind that "because closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the [fact finder] in final argument. [I]n addressing the [fact finder], [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Nevertheless, [w]hile a prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Tate*, 85 Conn. App. 365, 370–71, 857 A.2d 394, cert. denied, 272 Conn. 901, 863 A.2d 696 (2004).

The statements by the prosecutor here were not generalizations about defense strategy that would impugn a particular strategic tactic that defense attorneys often use. This court has held such broad, sweeping statements to be improper argument. See *State* v. *Young*, 76 Conn. App. 392, 404, 819 A.2d 884 (finding improper prosecutor's statement that defense counsel's argument regarding in-court identification "always a favorite argument"), cert. denied, 264 Conn. 912, 826 A.2d 1157 (2003); *State* v. *Brown*, 71 Conn. App. 121, 128–29, 800 A.2d 674 (finding improper prosecutor's statement that particular argument by defense counsel was smoke screen), cert. denied, 261 Conn. 940, 808 A.2d 1133 (2002). In both *Brown* and *Young*, however, the improper comments by the prosecutor in no way were steeped in the evidence presented in those cases and were not material to the issue of the defendants' guilt. The prosecutor's comments here directly related to the evidence adduced at trial, and highlighted the inconsistency between the defendant's testimony and the testimony from the state's witnesses. Furthermore, the defendant's relationship with the victim and the way in which he gained access to her were material issues in the case. Although the prosecutor could have been more artful in phrasing her argument, she did not impugn the integrity of defense counsel. The argument, even as worded, was not improper.

D

The defendant's last claim is that the prosecutor engaged in misconduct by attempting to bolster the victim's credibility by injecting extraneous matters into the case by stating that the victim's two brothers and M believed in the victim's allegations.

The following additional facts are necessary to our resolution of this claim. During cross-examination of M, defense counsel asked whether either of the victim's

brothers ever suggested that they had observed any-
thing inappropriate between the victim and the defen-
dant. M responded that J, the victim's older brother,
who was unavailable to testify at trial, "claimed a lot
of things make sense now," a statement he made after
the victim already had made known the allegations
against the defendant. Additionally, D, the victim's
younger brother, testified, in response to questioning
by the prosecutor, that he saw something odd occur
once between his sister and father, and recounted an
instance in which the victim and the defendant were
sitting next to each other on a couch, but quickly sepa-
rated when he turned around to look at them. M also
testified, on direct examination by the prosecutor, that
several encounters she had witnessed between the
defendant and the victim had concerned her and caused
her to worry about the propriety of the defendant's
relationship with the victim. In closing argument,
defense counsel strongly suggested that the victim's
allegations against the defendant were the product of
coaching from M and that inferences could be drawn
in favor of this conclusion because of the timing of the
disclosure and the lack of eyewitnesses to any sexual
abuse. In the state's rebuttal argument, the prosecutor
responded to these arguments.

The prosecutor, early in the state's rebuttal argument,
stated: "There was a suggestion [by the defense] that
the boys were not suspicious and yet [J] says when he
finds out, oh, now things make sense, looking back on
what was going on in the home."[12] The prosecutor later
discussed the timing of the disclosure. "[The victim]

[12] We note that defense counsel objected to this comment at the conclusion
of closing arguments as not being based on the evidence. The state responded
by pointing out to the court that defense counsel had elicited this statement
from M during cross-examination, which our review of the transcript con-
firms. The court noted that it had ordered copies of the transcript and would
review all of the evidence carefully. This was the sole objection made by
defense counsel to the state's argument.

made the disclosure when she felt safe with M, and there was a claim early on that there were no eyewitnesses to this. Well, [the victim] is an eyewitness to her own suffering, Your Honor. [J] said [that] looking back, it all made sense. M talked about always worrying about it. D says, you know, there was a time when she jumped up, and that's the time that [the victim] says that her father was fondling her."

The prosecutor also stated in relevant part: "The defense said, well, you know, he wouldn't have had the time. . . . He certainly had the time to have enough access to a child whom he groomed, Your Honor, whom he treated well in his own home in a controlled setting, where he knew who was coming and going and when they would come and go. Four out of the five people who lived in the house at the time obviously found it plausible that he could do this because [the victim's brothers] sided with [the victim], not just M."

The defendant claims that these three statements constitute a violation of *State* v. *Singh*, 259 Conn. 693, 793 A.2d 226 (2002),[13] in that the prosecutor was attempting to bolster the credibility of the victim by referencing others' beliefs in the victim's allegations. Although these statements may have had the effect of bolstering the victim's credibility, we disagree with the defendant's claim that the argument constituted a *Singh* violation.[14]

---

[13] In *State* v. *Singh*, supra, 259 Conn. 707–708, our Supreme Court held that it is improper to ask a witness to comment on another witness' veracity, in large part because determining the credibility of witnesses is solely within the province of the jury.

[14] We also note that the context of these statements suggests that the prosecutor, in making these statements, was attempting to refute arguments by defense counsel that the defendant lacked the time to abuse the victim or that M coached the victim in making these allegations. The prosecutor's argument merely suggested to the fact finder that, were these allegations a product of coaching, more people than just the victim would have had to have been convinced to go along with M's plan.

We first note that the issue in *Singh* was whether it was proper on direct or cross-examination to ask a witness to comment on the veracity of another witness. That issue is not present in this case. There is no claim by the defendant that the state improperly questioned any witnesses about the credibility of any other witness. Rather, the defendant's claim is limited solely to the state's closing argument. There is no case in this jurisdiction that suggests it is improper for counsel to argue that evidence properly adduced at trial supports or belies the credibility of any witness. In fact, the holdings of this court and our Supreme Court suggest the opposite. "Our decisional law on prosecutorial misconduct makes clear that as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts *in evidence* and the reasonable inferences to be drawn therefrom." (Emphasis in original; internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 806, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004). Here, the prosecutor's argument was based on facts in evidence or inferences that reasonably could be drawn from facts in evidence, and there is no claim that the state committed any misconduct either in offering into evidence the facts or in choosing not to object to the statement elicited by defense counsel on which the prosecutor then based this part of her argument.[15]

---

[15] We recognize that even if it were improper for the prosecutor to marshal the evidence in a manner that implicitly bolstered the victim's credibility, the defendant's claim would fail under the due process prong of our analysis. "[T]he ultimate question is, in light of the conduct that [the reviewing court has] concluded was improper, whether the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process. . . . This final determination requires . . . the consideration of several factors: the extent to which the misconduct was invited by defense conduct or argument, the severity of the misconduct, the frequency of the misconduct, the centrality of the misconduct to the critical issues in the case, the strength of the curative mea-

The judgment is affirmed.

In this opinion the other judges concurred.

sures adopted and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Santiago*, 269 Conn. 726, 756, 850 A.2d 199 (2004).

Even if we assume that the alleged misconduct was central to the issues in the case and that the state's case was not strong because it rested largely on the credibility of the victim, we cannot conclude that the three challenged statements by the prosecutor were tantamount to severe or frequent misconduct, especially in light of the prosecutor's comment to the court that assessments of credibility were in its domain. See footnote 10. We also consider that this claimed impropriety occurred during closing argument in a trial to the court. "While this fact alone would not excuse an egregious violation of the rule, it is properly taken into consideration as part of the context in which it is made." (Internal quotation marks omitted.) *State* v. *Dumas*, 54 Conn. App. 780, 789, 739 A.2d 1251, cert. denied, 252 Conn. 903, 743 A.2d 616 (1999).

Here, the court went to great lengths in ordering transcripts of the trial and noted in open court that it understood counsel's argument merely to be argument and nothing more. As a general rule, we do not presume that the trial court acted in error. *Carothers* v. *Capozziello*, 215 Conn. 82, 105, 574 A.2d 1268 (1990). This is especially true when, as here, any claimed misconduct was not so severe or frequent as to have implicated the defendant's right to a fair trial.