## STATE OF CONNECTICUT *v.* JOHN M.
### (SC 17398)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.[*]

---

[*] The listing of justices reflects their seniority status as of the date of oral argument.

Argued January 10, 2007—officially released March 11, 2008

*John W. Watson*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's

attorney, and *Anne Mahoney*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. The defendant, John M., was arrested and charged with various crimes stemming from his alleged sexual abuse of his daughter, R.[1] After a bench trial, the court found the defendant guilty of four counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), three counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1),[2] and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[3] Following the imposition of sentence,[4] the defendant appealed to the Appellate Court, claiming, inter alia, that the trial court had deprived him of his constitutional right to present a defense by precluding him from adducing testimony tending to establish (1) that R falsely had accused him of sexually abusing her on prompting from M, the defendant's former wife, and

[1] In accordance with General Statutes § 54-86e and this court's policy of protecting the privacy interests of victims of sexual abuse, we do not identify the victim or others through whom the victim's identity may be ascertained.

[2] The defendant was charged with three counts of sexual assault in the second degree. Because the conduct that formed the basis of those counts occurred between 1998 and 2000, however, two of the counts were brought under the 1999 revision of § 53a-71 (a) (1) and one count was brought under the 1997 revision of § 53a-71 (a) (1). In the interest of simplicity, we refer to the current revision of § 53a-71 (a) (1) as the version of the statute under which the defendant had been charged.

[3] We note that the conduct that gave rise to the risk of injury charges allegedly had occurred between September, 1994, and July, 2000. Although § 53-21 was subject to several amendments between 1995 and 2000, there is no dispute that the conduct in which the defendant allegedly had engaged was prohibited under all of the versions of the statute applicable during that time period. In the interest of simplicity, we refer to the current revision of § 53-21 as the version of the statute under which the defendant was charged.

[4] The trial court sentenced the defendant to a total effective term of eighteen years imprisonment, execution suspended after eleven years, and twenty years probation.

(2) M's animus toward the defendant. The Appellate Court rejected the defendant's constitutional claim, concluding that the trial court had not abused its discretion in precluding the defendant from adducing such testimony. *State* v. *John M.*, 87 Conn. App. 301, 310–311, 865 A.2d 450 (2005). We granted the defendant's petition for certification to appeal limited to the issue of whether the Appellate Court properly concluded that the trial court's evidentiary rulings had not deprived the defendant of a fair trial. *State* v. *John M.*, 273 Conn. 916, 917, 871 A.2d 372 (2005). With respect to the defendant's claim concerning M's alleged coaching of R, we conclude that the record is inadequate for review of the claim. We further conclude that, even if the record were adequate for such review, any impropriety in the trial court's evidentiary ruling was harmless beyond a reasonable doubt. With respect to the defendant's second claim, we conclude that, even if the trial court improperly precluded the defendant from adducing certain evidence of M's alleged animus, that ruling also was harmless beyond a reasonable doubt. We therefore affirm the judgment of the Appellate Court.

The trial court reasonably could have found the following facts. In 1982, the defendant, who was nineteen years old and residing in Windsor Locks, impregnated his fourteen year old neighbor, JD, who gave birth to a son, J, in 1983. The defendant and JD were married after JD's sixteenth birthday.

The defendant joined the United States Air Force, and, in 1984, the defendant, JD and J moved to New Mexico. On September 14, 1984, JD gave birth to R. Sometime thereafter, the defendant and JD divorced, and JD moved out of the family home, leaving J and R in the care of the defendant.

In February, 1986, the defendant, then twenty-three years old, met M in New Mexico. Although M was only

fifteen years old, the defendant and M began a romantic relationship, and they were married on July 28, 1986, M's sixteenth birthday. Approximately six months later, M gave birth to a son, D. In 1989, the defendant was discharged from the Air Force and he, M, R, J and D moved back to Connecticut. Several years after the move to Connecticut, M was diagnosed with multiple sclerosis.

In the spring of 2000, the defendant became involved in a romantic relationship with a coworker, L. The following summer, the defendant decided to leave his family and move in with L. After informing M and his three children of his decision, the defendant gradually moved his personal possessions into an apartment that he planned to share with L.

On September 10, 2002, the day after the defendant had moved out, M and R had a discussion during which M attempted to explain to R, who was less than one week shy of her sixteenth birthday, that the family would be better off without the defendant. M told R that the defendant was very controlling and, in fact, had forced M to make pornographic videos and take a job as an exotic dancer. At that point, R became hysterical and "couldn't hold it in anymore." She then told M that the defendant had been sexually abusing her for years.

According to R, the sexual abuse began when she was approximately eight years old and occurred frequently, often on a daily basis. R specifically described eight separate instances of sexual abuse, beginning in 1992 and ending in July, 2000, shortly before the defendant moved out. The abuse included inappropriate kissing and touching, fellatio, cunnilingus and sexual intercourse. The defendant also engaged in sexual conduct with R after she had consumed alcoholic beverages that the defendant had given her. R described one such

incident that occurred when she was ten years old, and another when she was eleven years old. The defendant and R also had watched an adult videotape, entitled "Taboo," that contained sexually explicit scenes of incest between fathers and daughters. Most of the defendant's misconduct occurred in the family home, although R described episodes that occurred in the defendant's car and at a local motel. R testified that she had not revealed the abuse sooner because she did not realize that the defendant's conduct was abnormal until she was in the seventh grade. She did not disclose the abuse at that time because she "was under the impression that [she] would lose . . . the whole family [and that] [n]o one would believe [her]."

The state also adduced evidence corroborating R's testimony. For example, the state presented several constancy of accusation witnesses, including M, two police officers and a nurse. The state also established that the defendant had purchased the adult videotape, "Taboo," depicting father-daughter incest.[5] In addition, the state presented testimony from the defendant's son, D, confirming that the defendant had provided alcohol both to him and to R. Moreover, several of the defendant's family members testified about incidents that, in retrospect, they believed supported R's allegations of misconduct.[6] The state also introduced evidence indicating that R accurately had described the room in the

[5] In his trial testimony, the defendant acknowledged that he had purchased the videotape.

[6] For example, when R's allegations against the defendant came to light, the defendant's older son, J, remarked, "a lot of things make sense now." The defendant's younger son, D, recalled one incident when he turned around and saw R "[jump] back" from the defendant; D testified that, "I realize now that I saw something." Although the defendant's mother testified that she did not believe that the defendant ever would engage in the kind of conduct with which he had been charged, R testified that, when the defendant's mother first learned of R's allegations, the defendant's mother "wasn't really surprised" because of the defendant's "weird" behavior with JD when JD was only fourteen years old.

local motel where the defendant had sexually abused her.

The defendant testified and denied R's allegations of sexual abuse. The defendant also sought to testify about certain statements that M allegedly had made to him concerning a history of sexual abuse that M herself had suffered. Defense counsel claimed that the testimony was relevant because the abuse that M had related to the defendant was "starkly similar" to the abuse that R allegedly suffered, thereby giving rise to an inference that R's testimony had been the product of "coaching" by M. The trial court sustained the state's objection to the testimony on relevancy grounds.

Defense counsel also called several witnesses, including L, the defendant's former girlfriend and current wife, and the defendant's mother, who provided testimony in support of L's claim that the defendant was not the kind of person who would have engaged in the conduct alleged by R. On cross-examination of several of the state's witnesses, defense counsel attempted to suggest that M had induced R to fabricate the allegations against the defendant.[7] In addition, defense counsel sought to demonstrate that M had motives to persuade R to implicate the defendant falsely, namely, that M was upset with the defendant because he had decided to leave her for L, and that M wanted to make certain that R would reside with her and not with the defendant.

Defense counsel also attempted to establish these motives on direct examination of the defendant. During that examination, the defendant sought to testify that M had told him, after she had learned that he intended to leave her for L, that she believed that the defendant would return to her. Defense counsel claimed that this

---

[7] Defense counsel, however, did not question either M or R about whether M had persuaded R to make false accusations of sexual misconduct against the defendant.

evidence was relevant to establish that M did not want her marriage to the defendant to end, and that she was angry at the defendant for leaving and not returning. The trial court again sustained the state's objection to this proffered testimony on the ground that it was irrelevant.

At the conclusion of the evidence and following closing argument by counsel, the trial court rendered an oral decision, stating that it found the defendant guilty of all charges. The court stated, inter alia, that R was a credible witness who "withstood a long, incisive, probing, thorough and very skilled cross-examination." The court also stated that, despite that cross-examination, "[s]he remained consistent and adamant about what she had always maintained [the defendant] did to her," both in her trial testimony and in her statements to the various constancy of accusation witnesses. After observing that R had nothing to gain by implicating the defendant and that there was no indication that R held any "long-term or . . . intense animosity [toward him]," the court rejected the defendant's contention that R had "conspired with [M] to concoct [R's] . . . allegations of sexual abuse by her own biological father [i.e., the defendant] . . . ." The court further determined that the evidence did not support the defendant's similar claim, which he raised to explain R's testimony, that M had goaded R into testifying falsely against the defendant. Finally, the court expressly discredited the defendant's testimony, characterizing it as "merely self-serving . . . ."

The defendant thereafter appealed to the Appellate Court from the judgment of conviction, claiming, inter alia, that the trial court improperly had precluded him from testifying about M's alleged statements to him concerning her history of sexual abuse and her belief that the defendant eventually would leave L and return

to her.[8] *State* v. *John M.*, supra, 87 Conn. App. 304 and n.3. The defendant asserted that these two alleged evidentiary improprieties had impaired his constitutionally protected right to present a defense, thereby requiring a new trial, because the excluded evidence "was vital to his theory of the case, which was that M persuaded [R] to make these allegations against him either (1) to punish him for leaving M, who has been diagnosed with a crippling disease, for another woman or (2) to ensure that [R] could reside with M after the divorce even though M is not her biological or adoptive parent." Id., 304.

The Appellate Court rejected both of the defendant's claims. Id., 310–11. With respect to the defendant's contention that the trial court should have permitted him to testify about M's alleged history of sexual abuse, the Appellate Court concluded that the trial court had not abused its discretion in excluding the proffered evidence as irrelevant. The Appellate Court explained: "The defendant's testimony . . . was that M shared her history of sexual abuse with him, not with [R]. The defendant's argument, therefore, would have required the [trial] court, as fact finder, to make the inferential leap that because M shared this information with the defendant, she must have shared it with [R] and then coached [R] using this history. [The court is] unable to say . . . that the [trial] court abused its discretion when it determined that this evidence, independent of any evidence that M shared her history with [R], was irrelevant as to whether M had coached [R] in making

---

[8] With respect to the defendant's claim that the trial court improperly precluded him from testifying about M's belief that the defendant would leave L and return to M, the Appellate Court characterized this claim as one challenging the decision of the trial court to preclude the defendant from adducing testimony regarding M's animus toward the defendant. See *State* v. *John M.*, supra, 87 Conn. App. 304, 307–10. M's alleged animus apparently stemmed from the defendant's decision to remain with L and not to return to M despite M's belief that the defendant would do so.

her allegations against the defendant." Id., 306. With respect to the defendant's proffered testimony concerning M's belief that the defendant would leave L and return to her, the Appellate Court concluded that the trial court had not abused its discretion in excluding that evidence because its relevance, if any, to the central issue in the case, namely, the veracity of R's allegations, was minimal at best.[9] See id., 310.

We granted the defendant's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the trial court's evidentiary rulings, precluding evidence of M's sexual abuse and of M's animus toward the defendant, did not deprive the defendant of a fair trial?" *State* v. *John M.*, supra, 273 Conn. 917. We agree with the state that the Appellate Court properly concluded that the challenged evidentiary rulings do not entitle the defendant to a new trial.

Before addressing the merits of the defendant's claims, we first set forth certain general principles that govern our review of those claims. "The federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . [guarantees] the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . .

"A defendant is, however, bound by the rules of evidence in presenting a defense. . . . Although exclu-

---

[9] The defendant also claimed that the assistant state's attorney had committed certain improprieties during closing argument. *State* v. *John M.*, supra, 87 Conn. App. 311. The Appellate Court rejected this claim, however; id., 313–19; and we did not certify that issue for review. Accordingly, it is not the subject of this appeal.

sionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . Thus, our law is clear that a defendant may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated. . . .

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . .

"[Furthermore], [i]t is well established that a trial court has broad discretion in ruling on evidentiary matters, including matters related to relevancy. . . . Accordingly, the trial court's ruling is entitled to every reasonable presumption in its favor . . . and we will disturb the ruling only if the defendant can demonstrate a clear abuse of the court's discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Tutson*, 278 Conn. 715, 748–49, 899 A.2d 598 (2006).

Finally, "[w]hen an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [A] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Citation omitted; internal quotation marks omitted.) *State* v. *Randolph*, 284 Conn. 328, 363, 933 A.2d 1158 (2007). "[I]f an [evidentiary]

impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt." (Internal quotation marks omitted.) Id., 377. With these general principles in mind, we turn to the merits of the defendant's claims.

I

The defendant first contends that the Appellate Court improperly concluded that the trial court had not abused its discretion in prohibiting him from testifying about certain statements that M allegedly had made detailing her experiences as a victim of sexual abuse. We reject the defendant's claim.

At trial, the defendant attempted to demonstrate that R had fabricated her allegations of abuse against the defendant at the instigation of M. In support of this theory, the defendant sought to establish that M was motivated to harm him and that R's accusations of sexual abuse were the product of coaching by M. The defendant adduced some circumstantial evidence that, according to him, supported his claim. For example, the evidence indicated that M, who was close to R, was the first person to whom R reported the abuse and that M was present during R's first interview with the police. In addition, M acknowledged that, after R had told M that the defendant had been sexually abusing her, M discussed a distinguishing feature of the defendant's genitalia with R.[10] M also acknowledged that, after R had reported her allegations to the police, M had driven with R to the local motel where the defendant had

---

[10] M testified that, after R had revealed that the defendant had been sexually abusing her, M had a discussion with R as to whether the defendant had a mole or freckle on his genitalia. R believed that the defendant had such a mole or freckle; M did not share R's belief.

sexually abused R.[11] Finally, the defendant's mother testified that, during her conversation with R in which R first revealed to the defendant's mother that the defendant had abused her, R repeatedly looked in the direction of M, the only other person in the room, and, during the conversation, M "would prompt" R to explain what the defendant had done to her.

On direct examination, the defendant sought to testify about statements that M had made to him about sexual abuse that she previously had suffered. Following the state's objection, defense counsel argued that M's alleged history of abuse was relevant because it tended to substantiate the defendant's contention that M had "coached" R to make false accusations against him. In particular, defense counsel asserted that, because the sexual abuse that M allegedly had suffered was "starkly similar"[12] to the abuse that R allegedly had suffered, evidence of M's abuse gave rise to an inference that M had induced R to fabricate her claims against the defendant.[13] The trial court concluded that the proffered testimony was too speculative to permit an inference of coaching and fabrication because there was nothing in the record to suggest that M ever had told *R* about M's prior history of sexual abuse. The defendant claims

[11] According to M, she and R were driving in the car when R exclaimed, "[t]here it is . . . [t]here it is," referring to the motel to which the defendant had taken her. M further explained that they had driven into the parking lot of the motel because R wanted to ascertain the number of the room that she had been in with the defendant.

[12] Defense counsel also characterized M's statements to the defendant as reflecting a history of sexual abuse that was "starkly parallel" and "essentially identical" to the abuse that R allegedly had suffered.

[13] The state also objected on the ground that the testimony contained inadmissible hearsay. Defense counsel indicated, however, that M's statements to the defendant were not hearsay because they were not being offered to prove the truth of the matter asserted but, rather, as circumstantial evidence that M had induced R to fabricate her allegations against the defendant.

that the trial court's ruling was improper because the starkly similar nature of the sexual abuse that M and R allegedly had suffered is *itself* sufficient to permit a reasonable inference that R's testimony was the product of coaching by M. In other words, the defendant claims that the abuse that M allegedly had suffered was so markedly similar to the abuse that R allegedly had suffered that the trial court reasonably could have found that R had fabricated her allegations against the defendant at the urging of M.

We conclude that the record is inadequate for review of the defendant's claim. Although defense counsel asserted that M had recounted to the defendant a history of personal sexual abuse that was "starkly similar" to the abuse that R had accused the defendant of inflicting on her, the defendant never provided the court with a proffer detailing M's alleged statements to him. In the absence of such a proffer, we are required to rely on defense counsel's *characterization* of M's abuse as "starkly similar" to the abuse that R allegedly had suffered. In the absence of a factual proffer, we cannot reasonably determine whether M's alleged abuse was, in fact, so similar to R's alleged abuse that the trial court would have been required to permit the defendant to testify about M's alleged statements to him describing her own history of sexual abuse.

Such a proffer was especially necessary in the present case because R provided graphic and detailed testimony about a pattern of sexual abuse by the defendant that had occurred over a period of eight years. Moreover, the abuse was not isolated, either in time or in kind; the defendant repeatedly engaged R in many and varied forms of sexual contact and relations over many years. Under these circumstances, it is difficult to see how M's alleged history of sexual abuse could have been so "starkly similar" to the sexual abuse that R had suffered

such that it reasonably could be inferred that R's allegations of abuse were merely a fabrication based on M's own allegations of abuse.

Even if we assume that defense counsel's characterization of M's statements to the defendant provided an adequate basis for this court's review of the defendant's claim, however, and even if we also assume that the defendant should have been allowed to testify about M's statements to him, the defendant cannot establish that the trial court's exclusion of the testimony constituted harmful error. The trial court did not believe that the proffered testimony about M's alleged history of abuse, even though characterized as "starkly similar" to R's abuse, bore any relation to the fundamental issue before the court, that is, whether the defendant had sexually abused R. Because this case was tried to the court, and because the court rejected the defendant's proffered testimony as "highly speculative," it is clear "exactly how much weight the trial court would have given [the testimony] . . . had the court considered it: none." *People* v. *Patterson*, 192 Ill. 2d 93, 113, 735 N.E.2d 616 (2000). Consequently, even if we were to disagree with the Appellate Court's conclusion that the trial court did not abuse its discretion in sustaining the state's objection to the defendant's proffered testimony, the record establishes beyond a reasonable doubt that the adverse ruling had no bearing on the outcome of the trial.[14]

## II

The defendant also challenges the determination of the Appellate Court that the trial court properly pre-

---

[14] In light of our conclusion that the state has satisfied the more stringent harmless error test applicable to evidentiary improprieties of constitutional magnitude; see *State* v. *Randolph*, supra, 284 Conn. 377; we need not decide whether the alleged impropriety implicated the defendant's constitutional right to present a defense because, even if it did, the defendant cannot prevail.

cluded him from testifying about M's alleged belief that she expected him to leave L and to return to her. The defendant further contends that he is entitled to a new trial because the evidentiary ruling violated his constitutional right to present a defense. We reject the defendant's claim that the court's ruling requires a new trial.

At trial, "[t]he defendant . . . sought to testify that when he told M that he was 'splitting up with her,' she indicated that she expected him to come back to her.[15] . . . The defendant argued that the proffered testimony was relevant to the animus M felt toward him. The [trial] court, assuming M felt animus toward the defendant, concluded that any such animus was irrelevant as to the truth of [R's] allegations against the defendant." *State* v. *John M.*, supra, 87 Conn. App. 307. On appeal to the Appellate Court, the defendant claimed that the proffered testimony constituted admissible evidence of M's animus toward him; see id.; which, in turn, was relevant to demonstrate that M had a motive to persuade R to fabricate allegations of sexual misconduct against the defendant. The defendant further claimed that the trial court's refusal to permit him to present the proffered testimony violated his constitutional right to present a defense. Id., 304. The Appellate Court concluded that the trial court had not abused its discretion in barring the proffered testimony because, inter alia, the testimony concerning M's animus was only minimally probative of the veracity of R's allegations. Id., 309. The Appellate Court therefore concluded that the trial court's ruling did not implicate the defendant's right to present a defense. Id., 311. On appeal to this court,

---

[15] We note that M testified that she was happy that the defendant was moving out. M also testified that the defendant had told her that "[h]e was going to come back to [her] in about [one] year," and that, although she had told him that he could do so "under [her] terms," she, in fact, had no intention of allowing him to return. M also testified that she had been concerned that R would leave her to reside with the defendant and L, but R subsequently told M that she intended to live with M.

the defendant renews the claims that he raised in the Appellate Court.

We need not decide whether the Appellate Court properly rejected the defendant's claim that the trial court's evidentiary ruling was improper because, even if we assume, arguendo, that the trial court should not have excluded the proffered testimony, any such error was harmless beyond a reasonable doubt. The record is replete with evidence from which the trial court reasonably could have inferred that M felt hostility toward the defendant. For example, the evidence revealed that the defendant was controlling of M, that she had become an exotic dancer to please him, that he pressured her to participate in pornographic videos, which she later felt tremendous shame about, and that, even though M was suffering from a debilitating illness, the defendant had refused to sign an agreement to provide her with funds to support the children after he left the family home to be with L. The evidence also established that the defendant had an extramarital affair with L, and that he had suggested to M that L be permitted to reside with the defendant and M as the defendant's "second wife." M also had reason to resent the defendant because he decided to leave her for L, and because M was concerned about losing her biological child, D, and her stepchildren, J and R. Finally, the evidence indicated that the defendant had given M a sexually transmitted disease after the defendant had begun his affair with L. In sum, M had ample reason to harbor animosity toward the defendant; indeed, as the Appellate Court noted, the trial court indicated that it had assumed that M felt animus toward the defendant. Id., 307. Accordingly, there is no reasonable possibility that the trial court's exclusion of the proffered testimony resulted in any undue harm to the defendant.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.